**SINGLETON SCHREIBER, LLP**
CHRISTOPHER R. RODRIGUEZ, SB# 212274
   E-Mail: crodriguez@singletonschreiber.com
ANDREW D. BLUTH, SB# 232387
   E-Mail: abluth@singletonschreiber.com
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (619) 333-7479
Facsimile: (619) 255-1515

Attorneys for Plaintiffs,

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH LEVI PACK, an individual, on behalf of himself and all others similarly situated; MIN JI JUNG, an individual, on behalf of herself and all others similarly situated,<br><br>           Plaintiffs,<br><br>    v.<br><br>Johnson & Johnson Consumer Companies, Inc., a New Jersey corporation; GlaxoSmithKline LLC, a Delaware corporation; Reckitt Benckiser LLC, a Delaware corporation; Bayer Healthcare LLC, a Delaware limited liability corporation; Sanofi- Aventis U.S. LLC, a Delaware limited liability corporation; The Procter & Gamble Company, an Ohio corporation; Church & Dwight Co., Inc., a Delaware corporation; Walmart Inc., a Delaware corporation; Target Corporation, a Minnesota corporation; CVS Pharmacy, Inc., a Delaware corporation; Walgreen Co., an Illinois | CASE NO.<br><br>**PLAINTIFFS' CLASS-ACTION COMPLAINT FOR**<br><br>   1. **FRAUD**<br><br>   2. **NEGLIGENT MISREPRESENTATION**<br><br>   3. **BREACH OF EXPRESS WARRANTY**<br><br>   4. **STRICT LIABILITY-DEFECTIVE DESIGN**<br><br>   5. **UNFAIR BUSINESS PRACTICES (BUSINESS & PROFESSIONS CODE § 17200)**<br><br>**DEMAND FOR JURY TRIAL** |

1
CLASS ACTION COMPLAINT

corporation; Albertsons Companies Inc., a Delaware corporation; Rite Aid Corporation, a Delaware corporation; Amazon.com, Inc., a Delaware corporation; and DOES 1-20.

Defendants.

# COMPLAINT

Plaintiffs KENNETH LEVI PACK and MIN JI JUNG (collectively, "Plaintiffs"), and by and through their undersigned counsel, hereby bring this action on behalf of themselves and all others similarly situated, against Defendants, Johnson & Johnson Consumer Companies, Inc.; GlaxoSmithKline LLC; Reckitt Benckiser LLC; Bayer Healthcare LLC; Sanofi- Aventis U.S. LLC; The Procter & Gamble Company; Church & Dwight Co., Inc.; Walmart Inc.; Target Corporation; CVS Pharmacy, Inc.; Walgreen Co.; Albertsons Companies Inc.; Rite Aid Corporation; Amazon.com, Inc; and DOES 1 through 20 (collectively, "Defendants"), and states:

## INTRODUCTION

1. This is an action for damages related to Defendants' wrongful conduct in connection with the marketing, distribution and sale of products containing phenylephrine—a purported decongestant used as an active ingredient in at least 250 products, including without limitation Sudafed Sinus Congestion, Tylenol Cold & Flu Severe, Nyquil Severe Cold & Flu, Theraflu Severe Cold Relief, Mucinex Sinus Max, and many others, including generic brands developed by major retailers like CVS, Walmart, Target and Walgreens (the "Phenylephrine Products").

2. Defendants manufacture, test, promote, advertise, market, distribute and sell the Phenylephrine Products for the treatment of congestion and other associated cold and flu symptoms. Millions of Californians, and hundreds of millions of Americans, spend hard-earned money to purchase these products for help relieving congestion and other associated cold and flu symptoms because they are told by the

above-captioned Defendants that they work for that very purpose.

3.     For years, Defendants have advertised and marketed the Phenylephrine Products to unsuspecting consumers despite knowing that phenylephrine is ineffective for the treatment of nasal congestion and the other cold and flu symptoms for which Defendants promote its use. On or about September 12, 2023, the Federal Drug Administration, after careful study and consideration, announced publicly that phenylephrine is ineffective as a treatment for such symptoms.

4.     As a proximate result of Defendants' deceptive, fraudulent, unlawful, and/or unfair conduct, Plaintiffs collectively suffered hundreds of millions of dollars in damages in reliance upon Defendants' knowingly false representations about the effectiveness of phenylephrine and the Phenylephrine Products.

5.     Plaintiffs therefore demand judgment against Defendants and request, among other things, compensatory damages, statutory damages, punitive damages, attorneys' fees, costs and all other available remedies and damages allowed by law.

## PLAINTIFFS

6.     At all relevant times, Plaintiff **KENNETH LEVI PACK** was and has been a resident and citizen of the State of California.

7.     On numerous occasions within the statutory time period, in reliance upon Defendants' intentionally false and fraudulent marketing, Plaintiff Pack purchased the Phenylephrine Products, and each of them, within the State of California for the treatment of cold and flu symptoms.

8.     At all relevant times, Plaintiff **MIN JI JUNG** was and has been a resident and citizen of the State of New York.

9.     On numerous occasions within the statutory time period, in reliance upon Defendants' intentionally false and fraudulent marketing, Plaintiff Jung purchased the Phenylephrine Products, and each of them, within the State of New York for the treatment of congestion and other associated cold and flu symptoms.

# DEFENDANTS

10. Defendant **Johnson & Johnson Consumer Companies, Inc.** is a New Jersey corporation, with headquarters and a principal place of business in the State of New Jersey. Upon information and belief, Defendant Johnson & Johnson Consumer Companies, Inc. is a wholly owned subsidiary of Johnson & Johnson, a New Jersey corporation, with headquarters and a principal place of business in the State of New Jersey (collectively "J&J"). At all times relevant to this complaint, Defendant J&J was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Tylenol, Sudafed, and Benadryl.

11. Defendant **GlaxoSmithKline LLC** is a Delaware corporation with headquarters and a principal place of business in the State of Pennsylvania. Upon information and belief, GlaxoSmithKline LLC is a wholly-owned subsidiary of GlaxoSmithKline PLC a public limited company organized under the laws of England and Wales (collectively "GSK"). At all times relevant to this complaint, Defendant GSK was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Robitussin, Theraflu, Contac, and Advil.

12. Defendant **Reckitt Benckiser LLC** is a Delaware limited liability corporation, with headquarters and a principal place of business in the State of New Jersey. Upon information and belief, Reckitt Benckiser LLC, is a wholly-owned subsidiary of Reckitt Benckiser Group PLC, a public limited company organized under the laws of England and Wales (collectively "Reckitt"). At all times relevant to this complaint, Reckitt, was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Mucinex.

13. Defendant **Bayer Healthcare LLC** is a Delaware limited liability corporation with headquarters and a principal place of business in the State of New

Jersey. Upon information and belief, Bayer Healthcare LLC is a wholly-owned subsidiary of Defendant is Bayer Corporation, an Indiana corporation with a principal place of business in the State of Pennsylvania (collectively "Bayer"). At all times relevant to this complaint, Defendant Bayer was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Alka-Seltzer.

14. Defendant **Sanofi- Aventis U.S. LLC** is a Delaware limited liability corporation with headquarters and a principal place of business in the State of New Jersey. Upon information and belief, Sanofi- Aventis U.S. LLC is a wholly owned subsidiary of Sanofi S.A, a company organized under the laws of France (collectively "Sanofi"). At all times relevant to this complaint, Defendant Sanofi was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Allegra.

15. Defendant **The Procter & Gamble Company** ("Proctor") is an Ohio corporation with headquarters and principal place of business in the State of Ohio. At all times relevant to this complaint, Defendant Proctor was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Dayquil and NyQuil.

16. Defendant **Church & Dwight Co., Inc.** ("Church & Dwight") is a Delaware corporation with headquarters and principal place of business in the State of New Jersey. At all times relevant to this complaint, Church & Dwight was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Zicam.

17. Defendant **Walmart Inc.** ("Walmart") is a Delaware corporation with headquarters and principal place of business in the State of Arkansas. At all times relevant to this complaint, Walmart was engaged in the business of manufacturing,

marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

18. Defendant **Target Corporation** ("Target") is a Minnesota corporation with headquarters and principal place of business in the State of Minnesota. At all times relevant to this complaint, Target was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

19. Defendant **CVS Pharmacy, Inc.** ("CVS") is a Delaware corporation with headquarters and principal place of business in the State of Rhode Island. At all times relevant to this complaint, CVS was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

20. Defendant **Walgreen Co.** ("Walgreens") is an Illinois corporation with headquarters and principal place of business in the State of Illinois. At all times relevant to this complaint, Walgreens was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

21. Defendant **Albertsons Companies Inc.** ("Albertsons") is a Delaware corporation with its principal place of business in the State of Idaho. At all times relevant to this complaint, Albertsons was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

22. Defendant **Rite Aid Corporation** ("Rite Aid") is a Delaware corporation with its principal place of business in the State of Philadelphia. At all times relevant to this complaint, Rite Aid was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

23. Defendant **Amazon.com, Inc.** ("Amazon") is a Delaware corporation with its principal place of business in the State of Washington. At all times relevant

to this complaint, Amazon was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

24. The true names and capacities of defendants Does 1 through 200 are currently unknown to Plaintiffs who, therefore, sue these defendants under these fictitious names. These defendants are each directly and/or vicariously responsible, in some manner, for the harms alleged herein.  If/when Plaintiffs learn these defendants' true names and capacities, Plaintiffs will seek leave to amend this pleading accordingly.

25. The true names and/or capacities, whether individual, corporate, partnership, associate, governmental, or otherwise, of Defendants DOES 1 through 20, inclusive, and each of them, are unknown to Plaintiffs at this time, who therefore sues said Defendants by such fictitious names. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE caused injuries and damages proximately thereby to Plaintiffs as hereinafter allege; and that each DOE defendant is liable to Plaintiffs for the acts and omissions alleged herein below, and the resulting injuries to Plaintiffs, and damages sustained by Plaintiffs. Plaintiffs will amend this Complaint to allege the true names and capacities of said DOE Defendants when that same is ascertained.

## JURISDICTION & VENUE

26. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the class are citizens of a state different from Defendants.

27. This Court has personal jurisdiction over Defendants are authorized to conduct and do conduct business in California.  Defendants have engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling the Phenylephrine Products to Plaintiffs in California, and Defendants have sufficient minimum contacts with this

State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within the State to render exercise of jurisdiction by this Court permissible.

28. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because the Defendants transact substantial business in this District.

## CLASS ACTION ALLEGATIONS

29. Pursuant to Rules 23(a), (b)(3), (b)(2), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on their own behalf and on behalf of all other similarly situated consumers in the United States as members of the following proposed Nationwide and California State classes. The proposed Classes are defined as follows:

    a. **Nationwide class:** During the fullest period allowed by law, all persons within the United States who purchased the Phenylephrine Products, or any of them, at any time and at any location (the "Class").

    b. **California subclass:** During the fullest period allowed by law, all persons who, while a resident of California, purchased the Phenylephrine Products at any location in California, including without limitation any online purchase made from California (regardless of the shipping address of the consumer) (the "California Subclass" or the "Subclass").

    c. Nationwide class and California subclass members are collectively referred herein as "Class Members."

    d. Like Plaintiffs, all Class Members purchased the Phenylephrine Products based on the misrepresentations that said products were effective in the treatment of congestion and other associated cold

and flu symptoms, and that such understanding was reasonable and was a material basis for the decision to purchase the Phenylephrine Products, which Defendants intended to foster through its various marketing activities in connection with the sale of the Phenylephrine Products.

30. Excluded from the Class and Subclass are assigned judges and members of their families within the first degree of consanguinity, Defendants, and their subsidiaries, affiliates, officers, and directors.

31. The requirements of Federal Rule of Civil Procedure 23 are satisfied for the Class and California Subclass.

32. The proposed Class and California Subclass are so numerous that individual joinder of all their members is impracticable because members of the Class number in the tens or hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but are objectively ascertainable and will be determined through appropriate discovery.

33. Defendants possess objective evidence as to the identity of each Class Member and, to a reasonable degree of certainty, the damages suffered by each Class Member, including without limitation sales receipts, phone numbers, names, rewards accounts data, credit card data, customer service complaint forms/emails/date, and other evidence which objectively identifies class members.

34. Class Members may be notified of the pendency of this action by mail, publication and/or through the records of Defendants and third-party retailers and vendors.

35. There are common questions of law and fact affecting Plaintiffs and Class Members. Common legal and factual questions include, but are not limited to:

    a. Whether Defendants market and advertises the Phenylephrine Products in a way that is false or misleading.

    b. Whether by the misconduct set forth in this complaint,

        Defendants have engaged and continue to engage in unfair, fraudulent, or unlawful business practices;

    c.    Whether Defendants' conduct was committed knowingly and/or intentionally;

    d.    Whether Defendants' conduct constitutes violations of the federal and/or state laws asserted herein;

    e.    Whether Defendants had a duty to correct their fraudulent statements;

    f.    Whether Class members were harmed by Defendants' false statements;

    g.    Whether Defendants were unjustly enriched by their conduct;

    h.    Whether the Class is entitled to punitive damages;

    i.    Whether the Class is entitled to recover statutory attorney's fees;

    j.    Whether, as a result of Defendants' misconduct as alleged herein, Plaintiffs and Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

36. Plaintiffs' claims are typical of the claims of the proposed Class and Subclass because Plaintiffs and Class Members were harmed in the same manner by the same conduct.

37. Plaintiffs and Class Members have all sustained economic injury arising out of Defendants violations of common and statutory law alleged herein.

38. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclass.

39. Plaintiffs' interests do not conflict with the interests of the Class and Subclass he seeks to represent. Plaintiffs have retained counsel competent and experienced in prosecuting class actions, and Plaintiffs intend to prosecute this action vigorously.

40. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members.

41. Given the relatively small amount of damages at stake for any of the individual Class Members, individual litigation is not practicable.

42. Individual Class Members will not wish to undertake the burden and expense of individual cases.

43. In addition, individualized litigation increases the delay and expense to all parties and multiplied the burden on the judicial system. Individualized ligation also presents the potential for inconsistent or contradictory judgments.

44. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

45. Questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members. Injuries sustained by Plaintiffs and Class Members flow, in each instance, from a common nucleus of operative facts as set forth above.

46. In each case, Defendant used deceptive marketing and sales techniques aimed at the Class Members, causing harm to all Class Members as a result of such intentional conduct. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

47. Proposed class counsel possesses the knowledge, experience, reputation, ability, skill, and resources to represent the class and should be appointed lead counsel for the class.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.   Discovery Rule Tolling

48. As a result of the acts and omissions of Defendants, Plaintiffs could not have discovered, through the exercise of reasonable due diligence, that the active ingredient in the Phenylephrine Products was ineffective, as has now been declared

by the Federal Drug Administration. Thus, the applicable limitations periods did not begin to accrue until Plaintiffs discovered, or through the exercise of reasonable diligence should have discovered, Defendants' wrongful acts and omissions.

### B. Fraudulent Concealment Tolling

49. All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and misrepresentations about the effectiveness of phenylephrine and the Phenylephrine Products throughout the time period relevant to this action.

50. Defendants are under a continuing duty to disclose the true character, quality, efficacy, safety issues and safety concerns of phenylephrine and the Phenylephrine Products to its users, including Plaintiffs specifically. To date, Defendants have nevertheless failed to adequately and fully inform consumers about these matters, as discussed above.

51. Plaintiffs reasonably relied upon Defendants' knowing, affirmative misrepresentations and/or active concealment when Plaintiffs—and millions of similarly-situated Californians and Americans—purchased the Phenylephrine Products based on the representations and advertisements touting the effectiveness of such products in the treatment of congestion and other associated cold and flu symptoms.

52. Because Defendants actively concealed the true facts about the ineffectiveness of phenylephrine and the Phenylephrine Products, they are estopped from relying on any statutes of limitations defense.

## FIRST CAUSE OF ACTION
## Fraudulent Misrepresentation

53. Plaintiffs reallege and incorporate the allegations made above as if fully set forth below.

54. Plaintiffs bring this claim individually and on behalf of the Class.

55. At all relevant times, Defendants had the duty and obligation to truthfully

represent to Plaintiffs the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products. Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite the fact that each such Defendant knew that phenylephrine and the Phenylephrine Products were entirely ineffective against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

56. Defendants willfully deceived Plaintiffs and the public in general by making these intentional misrepresentations regarding the efficacy of phenylephrine and the Phenylephrine Products.

57. At the time the aforesaid misrepresentations were made, Defendants intended to induce Plaintiffs to rely upon such misrepresentations.

58. At the time Defendants made the above-described misrepresentations, Plaintiffs and the public in general reasonably believed them to be true. In reasonable and justified reliance upon said misrepresentations, Plaintiffs purchased the Phenylephrine Products.

59. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered serious financial harm, including the expenditure of substantial sums to purchase the Phenylephrine Products, which Defendants knew were and are ineffective for their advertised purpose.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

60. Plaintiffs reallege and incorporate the allegations made above as if fully set forth below.

61. Plaintiffs bring this claim individually and on behalf of the Class.

62. At all relevant times, Defendants had the duty and obligation to truthfully represent to Plaintiffs the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products. Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite

the fact that each such Defendant should have known that phenylephrine and the Phenylephrine Products were entirely ineffective against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

63. Defendants recklessly or at least negligently deceived Plaintiffs and the public in general by making these misrepresentations regarding the efficacy of phenylephrine and the Phenylephrine Products.

64. At the time the aforesaid misrepresentations were made, Defendants understood that their careless misrepresentations would induce Plaintiffs to rely upon them.

65. At the time Defendants made the above-described misrepresentations, Plaintiffs and the public in general reasonably believed them to be true. In reasonable and justified reliance upon said misrepresentations, Plaintiffs purchased the Phenylephrine Products.

66. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered serious financial harm, including the expenditure of substantial sums to purchase the Phenylephrine Products, which Defendants knew or should have known were and are ineffective for their advertised purpose.

### THIRD CAUSE OF ACTION

### Breach of Express Warranty

67. Plaintiffs reallege and incorporate the allegations made above as if fully set forth below.

68. Plaintiffs bring this claim individually and on behalf of the Class.

69. Section 2-313 of the Uniform Commercial Code provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

70. At all times, California and other states have codified and adopted the provisions of the Uniform Commercial Code governing the express warranty of

merchantability.

71. Plaintiffs, and each member of the Class, formed a contract with Defendants at the time Plaintiffs and the other members of the Class purchased the Phenylephrine Products. The terms of that contract include the cognitive health benefit promises and affirmations of fact made by Defendants on the Phenylephrine Products' labels and packages as described above. These representations constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendants on the other.

72. All conditions precedent to Defendants' liability under this contract have been performed by Plaintiffs and the Class Members.

73. At all relevant times, Defendants had the duty and obligation to truthfully represent to Plaintiffs the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products.  Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite the fact that each such Defendant knew that phenylephrine and the Phenylephrine Products were entirely ineffective against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

74. Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the Phenylephrine Products that could provide the cognitive health benefits as represented and described above.

75. As a result of Defendants' breach of their warranty, Plaintiffs and the Class have been damaged in the amount of the purchase price of the Phenylephrine Products they purchased.

## FOURTH CAUSE OF ACTION

### Strict Liability-Design and Manufacturing Defect

76. Plaintiffs reallege and incorporate the allegations made above as if fully set forth below.

77. Plaintiffs bring this claim individually and on behalf of the Class.

78. At the time that the Phenylephrine Products left the control of the Defendants, the Phenylephrine Products were defective as a result of Defendants' design, manufacture, alteration, or modification. The defects included, but are not limited to, materials that are unsafe for human skin contact, and/or materials not identified on the Product itself.

79. At all relevant times, Defendant knew and intended that the Phenylephrine Products would be purchased and used by members of the general public who would rely on Defendants to properly identify the relevant characteristics and usefulness of the Product.

80. At the time of the incidents giving rise to this Complaint, the Phenylephrine Products were being used in a manner that was foreseeable by the Defendants and in a manner which the Phenylephrine Products were intended to be used.

81. Defendants knew or should have known their manufacture or design of the Phenylephrine Products was defective, causing the Phenylephrine Products to fail to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

82. In addition, the risks inherent in the design of the Phenylephrine Products outweighs any benefits of that design.

83. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer serious harm.

## FIFTH CAUSE OF ACTION

**Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, et seq.)**

**(Plaintiffs and California Sub-Class Members)**

84. Plaintiffs reallege and incorporate the allegations made above as if fully set forth below. Plaintiffs assert this First Cause of Action on behalf of themselves and all other similarly-situated persons in California that paid hard-earned money for

the Phenylephrine Products based on the deceptive, false, unfair and unlawful marketing strategy touting the effectiveness of phenylephrine and the Phenylephrine Products for treatment of congestion and associated cold and flu symptoms.

85. By engaging in the above-described conduct, Defendants, and each of them, acted in a manner that is unlawful, unfair, and fraudulent, and have thus engaged in unfair business practices to the extreme detriment of Plaintiffs, which conduct is prohibited under California Business & Professions Code sections 17200, et seq.

86. Defendants' conduct has caused Plaintiffs to suffer harm, including through the payment of monies for the purchase of the Phenylephrine Products.

87. Plaintiffs are thus entitled to restitutionary and injunctive relief, including without limitation disgorgement of any unlawful gains that Defendants have obtained as a result of their unlawful, unfair and fraudulent conduct.

**Additional Allegations Regarding Punitive Damages**

**(All Applicable Causes of Action)**

88. The acts and omissions of Defendants described herein consisted of oppression, fraud and/or malice and were done with advance knowledge, conscious disregard of the rights of others and/or ratification by Defendants' officers, directors and/or managing agents.

89. Defendants' actions amounted to actual malice or reckless indifference to the likelihood of harm associated with their acts and omissions.\

90. Plaintiffs are entitled to punitive damages because Defendants misled, misrepresented and/or withheld information and materials from consumers and the public at large, including Plaintiffs, concerning the efficacy of phenylephrine and the Phenylephrine Products.

91. Despite the fact that Defendants were or should have been in possession of evidence demonstrating the ineffectiveness of phenylephrine and the Phenylephrine Products, Defendants continued to market Phenylephrine Products by

providing false and misleading information with regard to the efficacy of such products.

92. Defendants failed to provide consumers, including Plaintiffs, with available materials, information and warnings that would have ultimately dissuaded them from purchasing and consuming such products, thus depriving otherwise uninformed consumers from weighing the true risks and benefits of purchasing and ingesting the Phenylephrine Products.

93. Defendants' conduct was committed with knowing, conscious and deliberate disregard for the rights and safety of consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

94. Consequently, Defendants are liable for punitive damages in an amount to be determined by the jury at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

a. Certifying the Class and the California Subclass as requested herein;
b. Awarding Plaintiffs and the proposed Class Members damages;
c. Awarding restitution and disgorgement of Defendants' revenues to Plaintiffs and the proposed Class Members
d. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;
e. Ordering Defendants to engage in a corrective advertising campaign
f. Awarding punitive damages;

g. Awarding restitutionary disgorgement in favor of Plaintiffs and all other similarly situated persons in California;

h. Awarding the costs and expenses of this litigation to Plaintiffs;

i. Awarding reasonable attorneys' fees and costs to Plaintiffs as provided by law;

j. Awarding pre-judgment and post-judgment interest to Plaintiffs; and

k. For such further relief as this Court deems necessary, just and proper.

DATED: September 12, 2023     **SINGLETON SCHREIBER, LLP**

By: _____
CHRISTOPHER R. RODRIGUEZ
Attorneys for Plaintiffs KENNETH LEVI PACK and MIN JI JUNG